UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF INDIANA ex rel. BRADLEY A. STEPHENS, <br><br> Plaintiffs, <br><br> v. <br><br> DR. ARSHAD MALIK, DR. ERNEST MIRICH, DR. ZHAFAR KHALID and NUCLEAR CARDIOLOGY ASSOCIATES, <br><br> Defendants. | CAUSE NO.: 2:15-CV-307-TLS |

**OPINION AND ORDER**

The Relator Bradley A. Stephens brings an Amended Complaint [ECF No. 15] against Defendants Dr. Rakesh Kansal, Dr. Arshad Malik, Dr. Ernest Mirich, Dr. Zhafar Khalid, and Nuclear Cardiology Associates (NCA), alleging that these doctors knowingly made false claims to Medicaid for payment for myocardial stress tests and/or nuclear imaging services when they self-referred their patients to NCA—an entity that each doctor shares an ownership interest in—for those services, which NCA performed. The Relator arranges his allegations into three Counts involving four separate schemes implicating the federal False Claims Act (FCA), the federal Stark Law, and the Indiana False Claims Act. Count I contains two separate schemes.[1] The first scheme involves unlawful referrals and billing to Medicaid by the Doctors for falsely certifying

---

[1] Because "[o]ne set of facts producing one injury creates one claim for relief, no matter how many laws the deeds violate[,]" the Court assumes each scheme constitutes a distinct claim for relief. *N.A.A.C.P. v. Am. Fam. Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir. 1992) (citations omitted); *see also* Fed. R. Civ. P. 10(b) ("If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.").

compliance with the Stark Law.[2] The second scheme involves NCA causing the unlawful billing to Medicaid by the Doctors. Count II contains the third scheme, which involves unlawful billing to Medicaid by the Doctors for services they did not supervise or provide but that NCA provided instead. Count III contains the fourth scheme, which involves a conspiracy among the Doctors to submit false claims to Medicaid.

The United States elected to intervene in the part of the action related to allegations involving Dr. Kansal. ECF No. 70. However, the United States declined to intervene in the part of the action related to allegations involving Defendants Drs. Malik, Mirich, and Khalid (the Doctor Defendants). *Id*. The State of Indiana declined to intervene at all. ECF No. 73. The United States and the Relator filed a Joint Notice of Voluntary Dismissal of Defendant Dr. Rakesh Kansal [ECF No. 71], on June 12, 2023, which the Court granted on September 15, 2023 [ECF No. 84], dismissing Defendant Dr. Kansal from the instant action.

This matter is now before the Court on Defendant Dr. Ernest Mirich's Motion to Dismiss First Amended Complaint [ECF No. 96], Defendants Dr. Arshad Malik and Nuclear Cardiology Associates' Motion to Dismiss Plaintiff's Amended Complaint [ECF No. 98], and the Motion to Dismiss of Dr. Zhafar Khalid [ECF No. 100], each brought pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). The Motions are fully briefed and ripe for ruling. For the reasons set forth below, the Court grants the motions.

---

[2] Although "the Doctors" referred to Drs. Kansal, Malik, Mirich, and Khalid in the Amended Complaint, because Dr. Kansal has been dismissed from the instant litigation, *see* ECF No. 84, "the Doctors" now refers to only Drs. Malik, Mirich, and Khalid.

## LEGAL AND STATUTORY STANDARDS

A.   **Motion to Dismiss**

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014) (citing Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997)). When reviewing a complaint attacked by a Rule 12(b)(6) motion, a court construes the complaint in the light most favorable to the non-moving party, accepts the factual allegations as true, and draws all inferences in the non-moving party's favor. *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Claims of fraud brought under the FCA and the Indiana False Claims Act are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires a relator to "state with particularity the circumstances constituting fraud or mistake." *Lanahan v. County of Cook*, 41 F.4th 854, 861–62 (7th Cir. 2022) (quoting Fed. R. Civ. P. 9(b)). The "precise level of particularity required under Rule 9(b) depends upon the facts of the case," but the pleadings generally should describe "the who, what, when, where, and how of the fraud." *Camasta*, 761 F.3d at 737; *see United States ex rel. Prose v. Molina Healthcare of Ill., Inc.*, 17 F.4th 732, 739 (7th Cir. 2021) (recognizing that a plaintiff's allegations must be "precise" and "substantiated," though "courts and litigants should not 'take an overly rigid view of the

3

formulation'" (cleaned up)). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

**B.     False Claims Act**

"The FCA imposes civil liability on a series of actions related to fraudulent treatment of government funds." *Lanahan*, 41 F.4th at 861 (citing 31 U.S.C. § 3729(a)(1)). A private citizen, referred to as a "relator," may bring an action under the FCA "in the name of the Government." *Id.* (quoting 31 U.S.C. § 3730(b)(1)). Although the Relator references § 3729(a)(1) and § 3729(a)(1)(A) in the Amended Complaint, it appears that the Relator is alleging violations of § 3729(a)(1)(A), § 3729(a)(1)(B), and § 3729(a)(1)(C).

A defendant violates the FCA when it "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). A defendant also violates the False Claims Act when it "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." *Id*. § 3729(a)(1)(B). To establish a prima facie case for a violation based on a false or fraudulent claim or a false record or statement under the FCA, the plaintiff "generally must prove (1) that the defendant made a [claim, record, or] statement in order to receive money from the government; (2) that the [claim, record, or] statement was false; and (3) that the defendant knew the [claim, record, or] statement was false." *United States ex rel. Yannacopoulos v. Gen. Dynamics*, 652 F.3d 818, 822 (7th Cir. 2011) (citation omitted).

Under § 3729(a)(1)(C), civil liability is imposed when a person "conspires to commit a violation of subparagraph (A) [or] (B)." 31 U.S.C. § 3729(a)(1)(C). "[G]eneral civil conspiracy principles apply" to FCA conspiracy claims. *United States ex rel. Durcholz v. FKW Inc.*, 189 F.3d 542, 545 n.3 (7th Cir. 1999) (citation omitted).

**C.     The Stark Law**

Medicare is a federal health insurance program. *See* 42 U.S.C. §§ 1395–1395lll. The Stark Law prohibits physicians from referring patients for designated health services payable by Medicare to an entity with which the physician has a financial relationship. *See id*. § 1395nn(a)(1)(A). The Stark Law also prohibits such an entity from presenting or causing to be presented a claim or bill "to any individual, third party payor, or other entity for designated health services furnished pursuant to" those prohibited referrals. *Id*. § 1395nn(a)(1)(B).

**D.     Indiana False Claims Act**

The Indiana False Claims Act (Indiana FCA) prohibits any person from knowingly or intentionally "present[ing] a false claim to the state for payment or approval." Ind. Code § 5-11-5.5-2(b)(1). The Indiana FCA also prohibits "mak[ing] or us[ing] a false record or statement to obtain payment or approval of a false claim from the state," Ind. Code § 5-11-5.5-2(b)(2), and "conspir[ing] with another person to perform" one of those acts, Ind. Code § 5-11-5.5-2(b)(7). It further prohibits "caus[ing] or induc[ing] another person to perform" one of those acts. Ind. Code § 5-11-5.5-2(b)(8).

## FACTUAL BACKGROUND

The following allegations are taken from the Amended Complaint. The Relator alleges that he has direct and independent knowledge of the information on which the allegations are based. Am. Compl. ¶ 3, ECF No. 15.

**A.     The Defendants**

Dr. Arshad Malik is a cardiologist with his medical practice office at 8560 Broadway, Merrillville, IN 46410. *Id*. at ¶ 11. Dr. Malik engages in business as Arshad Malik, M.D., P.C., and he is the sole owner. *Id*. In 2012 and 2013, he received approximately $648,943 from Medicare for claims relating to the provision of myocardial profusion studies—also known as

5

nuclear stress tests, which are diagnostic imaging studies utilized to determine whether a patient has heart disease due to inadequate blood flow to the heart muscles. *Id*. at ¶¶ 12, 24.

Dr. Zafar Khalid is an internist with his medical practice office at 8550 Broadway, Merrillville, IN 46410. *Id*. at ¶ 13. Dr. Khalid engages in business as Elite Internal Medicine, P.C., and he is the sole owner. *Id*. In 2012 and 2013, he received approximately $296,396 from Medicare for claims relating to the provision of nuclear stress tests. *Id*. at ¶ 14.

Dr. Ernest Mirich is a cardiologist with his medical practice office at 8550 Broadway, Merrillville, IN 46410. *Id*. at ¶ 15. Dr. Mirich engages in business as Mirich Medical Corp., and he is the sole owner. *Id*. In 2012 and 2013, he received approximately $174,126 from Medicare for claims relating to the provision of nuclear stress tests. *Id*. at ¶ 16.

Nuclear Cardiology Associates (NCA) is located at 8564 Broadway in Merrillville, Indiana, and is located within the 8550-8564 S. Broadway Professional Center. *Id*. at ¶ 18. NCA is a Medicare-enrolled provider—owned by Drs. Kansal, Malik, Mirich, and Khalid—that performs nuclear stress tests and only accepts patients referred by the Doctors. *Id*. at ¶¶ 20, 45, 46.

**B.     Stress Tests and Nuclear Imaging**

The Doctors do not have the equipment necessary at their individual medical practice offices to perform the technical component of the nuclear stress tests. *Id*. at ¶ 44. They refer all Medicare patients to NCA for nuclear stress tests. *Id*. at ¶ 45. NCA owns or leases a Phillips ACAD machine, using the machine to perform nuclear imagining services such as nuclear stress tests. *Id*. at ¶ 19. NCA employs Camille Shoop, a licensed nuclear technician. *Id*. at ¶ 21. She oversees all services performed by NCA and its equipment. *Id*.

Nuclear stress tests include the following designated health services: (1) ultrasound exams of the heart; (2) administration of thallium tl-201 thallus chloride for diagnostic testing;

6

(3) ultrasound scanning of blood flow; (4) nuclear medicine study of vessels of the heart; (5) ultrasound studies of arteries of both arms and legs; (6) injection of regadenoson (Lexiscan®); and (7) the administration of technetium t-99m sestamitsi for diagnostic testing. *Id.* at ¶¶ 34, 45. These services are known as the "technical component" of the nuclear stress test. *Id.* at ¶¶ 44, 45.

The Doctors are not present during the performance of those designated health services at NCA nor do they provide supervision or maintain officer hours at NCA. *Id.* at ¶¶ 49, 50. In 2012 and 2013, NCA performed approximately 1,487 nuclear stress tests on Medicare-enrolled patients referred by the Doctors. *Id.* at ¶ 22.

**C.      Billing Practices of the Defendants**

The Doctors, through their individual business entities, each completed CMS Form 855B. *Id.* at ¶ 17. Also, each is a Medicare-enrolled provider that routinely bills Medicare for services. *Id.* However, NCA does not bill Medicare for any of the designated health services that it provides. *Id.* at ¶¶ 20, 47. Instead, NCA reassigned to the Doctors its right to bill for those services. *Id.* at ¶ 57. The Doctors billed Medicare for the professional and technical components of the nuclear stress tests. *Id.* at ¶ 64.

## ANALYSIS

In their Motions to Dismiss, the Defendants each argue that the Relator's Amended Complaint fails to plead facts with the necessary particularity for a fraud claim under Rule 9(b) in Counts I and II because the Amended Complaint contains no allegations of representative examples of the alleged fraudulent schemes. Additionally, the Defendants argue that the Amended Complaint fails to sufficiently allege a conspiracy claim in Count III. The Defendants further argue for dismissal of the Indiana State Law claims. Finally, they argue that the Relator should not be granted leave to amend the operative complaint if it is dismissed. The Court addresses each argument in turn.

A.     **Failure to Plead with Particularity—No Specific Representative Examples (Counts I and II)**

Under Rule 9(b), "to defeat dismissal [of an FCA claim], 'specific representative examples' of false submissions are required." *United States ex rel. Sibley v. Univ. of Chi. Med. Ctr.*, 44 F.4th 646, 656 (7th Cir. 2022) (quoting *United States ex rel. Mamalakis v. Anesthetix Mgmt. LLC*, 20 F.4th 295, 302 (7th Cir. 2021)). For example, in *Mamalakis*, the Seventh Circuit Court of Appeals held that the relator's ten specific examples in the operative complaint of non-compliance with proper billing "provid[ed] a particularized basis from which to plausibly infer that at least on these occasions, [the defendant] presented false claims to the government" because the examples were "detailed, identifying specific doctors and procedures and describing why each procedure should not have been billed as medically directed." 20 F.4th at 303; *see Sibley*, 44 F.4th at 656 ("*Mamalakis* teaches that the relators here must allege specific examples of patient debts."). Thus, when a complaint does not allege specific representative examples it "fail[s] to adequately set out the requisite 'who, what, when, where, and how' of the fraud." *Sibley*, 44 F.4th at 656–57 (quoting *Mamalakis*, 20 F.4th at 301; *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 779–80 (7th Cir. 2016)).

The Defendants are correct in that Counts I and II of the Amended Complaint fail to allege any representative examples of referrals by the Doctors to NCA for designated health services related to nuclear stress tests that NCA provided but for which the Doctors billed Medicare for reimbursement. For example, the Amended Complaint does not allege facts that show the existence of a specific patient of any of the Doctors, nor does it allege facts that show any specific designated health services related to a nuclear stress test that were improperly referred, provided by NCA, unbundled, or billed to Medicare for reimbursement. *See Sibley*, 44 F.4th at 656–57; *Mamalakis*, 20 F.4th at 301; *Presser*, 836 F.3d at 779–80. Rather, the Amended

Complaint alleges that "[b]y reassigning to the Doctors its right to bill for the DHS it provided and/or passively permitting each to bill for DHS, NCA *caused claims to be presented to* Medicare [] for services furnished pursuant to a prohibited self-referral," "the Doctors received payment from Medicare for claims tainted by their illegal self-referral of patients to NCA for DHS," "[t]he Doctors billed and continue to bill Medicare for . . . nuclear stress tests despite the fact that they do not provide them . . . with respect to all of their patients who are Medicare beneficiaries and otherwise require a nuclear test," and "the Doctors bill Medicare for . . . nuclear stress tests that are provided at NCA." Am. Comp. ¶¶ 57, 58, 66, 69. These bald allegations are conclusory with no factual support by way of any specific representative examples and thus are insufficient to state a claim for fraud.

The Relator argues that allegations—such as Dr. Malik received approximately $648,943 from Medicare for claims relating to the provision of nuclear stress tests, Dr. Zafar received approximately $296,396 from Medicare for claims relating to the provision of nuclear stress tests, and Dr. Mirich received approximately $174,126 from Medicare for claims relating to the provision of nuclear stress tests—satisfy Rule 9(b) because they are enough to put the Defendants on notice of the claims against them when combined with other allegations in the Amended Complaint. But these allegations do not meet the Rule 9(b) standard, which requires specific representative examples of false submissions. *See Sibley*, 44 F.4th at 656. Nor does the Relator point to any such specific examples. Instead, the Relator points to *Presser*, 836 F.3d at 778, a Seventh Circuit case from 2016, to support his argument that Rule 9(b) is satisfied for an FCA claim when "the alleged facts necessarily led one to the conclusion that the defendant had presented claims to the Government." In *Presser*, the Seventh Circuit arrived at this standard based in part on the holding in *United States ex rel. Lusby v. Rolls–Royce Corp.*, 570 F.3d 849 (7th Cir. 2009). *See Presser*, 836 F.3d at 777–78.

In *Lusby*, the alleged false claims involved statements related to engines meeting certain specifications, which the defendant, Rolls–Royce, sold to the government. *See id*. at 853. The Seventh Circuit was faced with the question of whether the plaintiff was required to produce the paperwork to support the allegations. In answering the question in the negative, the *Lusby* court explained:

> The complaint alleges that five contracts between Rolls–Royce and the United States require all of the engine's parts to meet particular specifications; that the parts did not do so (and the complaint describes tests said to prove this deficiency); that Rolls–Royce knew that the parts were non-compliant (not only because Lusby told his supervisors this but also because audits by Rolls–Royce's design and quality-assurance departments confirmed Lusby's conclusions); and that Rolls–Royce nonetheless certified that the parts met the contracts' specifications. The complaint names *specific* parts shipped on *specific* dates, and it relates *details* of payment.

*Id*. at 853–54 (emphasis added). Based on those specific and detailed allegations and recognizing that the relator likely "does not have access to the paperwork," the court held that it was not "essential for a relator to produce the invoices (and accompanying representations) at the outset of the suit" because the inference proposed by the plaintiff was plausible based on the specific allegations. *Id*. at 854. Allegations of specific non-compliant parts shipped on specific dates and the details of payment present in *Lusby* analogous to the medical setting in this case are absent in the Amended Complaint, as discussed above. Nor does the Relator provide a reason why he would not have access to the paperwork for specific bills submitted to Medicare by the Doctors or caused to be submitted to Medicare by NCA.

Moreover, the allegations in this case of the total amounts paid to the Doctors by Medicare along with the other conclusory allegations discussed above do not compare with the allegations that the court found adequate under Rule 9(b) in *Presser*. In *Presser*, the alleged false claims involved a clinic—Acacia, where the relator, Ms. Presser, was a nurse practitioner—

billing using the code 90801, a code for psychiatric evaluations. *See* 836 F.3d at 778. The *Presser* court explained:

> According to the complaint, this code is only meant to apply to full psychological assessments by a therapist or an evaluation by a psychiatrist. Ms. Presser alleges that her superiors directed her to use this code even though they also expressly told her to discontinue conducting psychiatric evaluations. She also alleges that receptionists and medical nurse practitioners used this code, even though their job description clearly does not include psychological assessments. The clinic director indicated to Ms. Presser that the use of this specific code was the policy and that Mr. Freund wanted these policies in place. Acacia mandated that all patients be assessed by a receptionist, nurse practitioner, and medical nurse practitioner, and each of these encounters were billed separately. These allegations state clearly and specifically that Acacia provided non-psychiatric evaluations and then falsely presented those services as psychiatric evaluations on bills to the state and federal governments.

*Id*. (cleaned up).

Although the relator in *Presser* did not submit any representative examples of such bills with her complaint, the court held, "Considering Ms. Presser's position as a nurse practitioner, a position that does not appear to include regular access to medical bills, we do not see how she would have been able to plead more facts pertaining to the billing process." *Id.* (citing *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1051 (7th Cir. 1998)). Correspondingly, the court also held that "Ms. Presser's complaint sufficiently alleges that the defendants misused a billing code and falsely represented to the state and federal governments that a certain treatment was given by certain medical staff when in fact it was not." *Id*. at 779. Unlike in *Presser* where the relator pled that she was a nurse practitioner at the clinic where she alleged the improper billing occurred, in this case, the Relator has merely pled that he is an "original source" without providing any more information about how he obtained the information contained in the Amended Complaint; thus, the Relator here has not alleged facts to establish that he lacks access to all facts necessary to allege his claims in more detail.

11

Additionally, *Presser* pre-dates by approximately six years *Sibley*, where the Seventh Circuit clarified that to defeat the dismissal of an FCA claim, specific representative examples of false submissions are required. *See Sibley*, 44 F.4th at 656. And, "[t]he purpose (the defensible purpose, anyway) of the heightened pleading requirement in fraud cases is to force the plaintiff to do more than the usual investigation before filing his complaint." *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999). Satisfying this requirement ensures that the plaintiff's claims are "responsible and supported, rather than defamatory and extortionate." *Id*.

Because the Amended Complaint here fails to allege specific representative examples or a reason why the Relator would not have access to such facts, the Court concludes that the Relator has not plead facts with sufficient particularity against the Defendants to satisfy the requirements of Rule 9(b). Consequently, Counts I and II of the Amended Complaint have not alleged violations of the FCA with the requisite particularity. Accordingly, the Court grants the Defendants' requests for dismissal of the FCA claims in Counts I and II of the Relator's Amended Complaint. Thus, the Court need not address the parties' additional arguments on the dismissal of Counts I and II.[3]

---

[3] The Relator also argues that because the Doctors have not sought early summary judgment it is plausible that the Doctors submitted the alleged Medicare claims, and so the Relator believes that he has met his Rule 9(b) burden. In support, he cites *United States ex rel. Myers v. Am.'s Disabled Homebound, Inc.*, No. 14 C 8525, 2018 WL 1427171, at *5 (N.D. Ill. Mar. 22, 2018). However, the *Myers* court actually explained:

> Defendants should know the answer to the question of whether they submitted claims to Medicare on behalf of the patients identified in the complaint. If Defendants knew that they never actually submitted Medicare claims for home health services provided to the twelve named patients, Defendants could have sought early summary judgment based on those records, and remain free to do so in the future. It is plausible, and in fact likely, that Defendants submitted Medicare claims for services provided to the twelve patients. The real question in this case will be whether those patients were properly certified as eligible for those services under Medicare.

2018 WL 1427171, at *5. Unlike in *Myers*, here the Relator did not identify any patients of the Doctors in the Amended Complaint. Also, the *Myers* court did not hold that the relator met its Rule 9(b) burden because the defendants did not file a motion for summary judgment. Thus, the Court finds the Relator's argument unavailing.

**B.      Failure to Sufficiently Plead a Conspiracy Claim Under the FCA (Count III)**

The FCA provides for conspiracy claims, *see* 31 U.S.C. § 3729(a)(1)(C), and "general civil conspiracy principles apply," *FKW Inc.*, 189 F.3d at 545 n.3 (citation omitted). To sufficiently

> plead an FCA conspiracy claim, a plaintiff must allege that the defendants had an agreement, combination, or conspiracy to defraud the government by getting a false or fraudulent claim allowed or paid and that they did so for the purpose of obtaining or aiding to obtain payment from the government or approval of a claim against the government.

*United States v. Wagoner*, No. 2:17-CV-478, 2018 WL 4539819, at *8 (N.D. Ind. Sept. 20, 2018) (quoting *U.S. ex rel. Lisitza v. Par Pharm. Cos.*, No. 06 C 06131, 2013 WL 870623, at *7 (N.D. Ill. Mar. 7, 2013)) (cleaned up). However, the standard for sufficiently pleading a conspiracy claim also requires the plaintiff to allege that there was an overt act by the co-conspirators that resulted in actual damage or injury. *See Lenard v. Argento*, 699 F.2d 874, 882 (7th Cir. 1983). In the context of the FCA, this means that "an actionable FCA conspiracy exists only where at least one of the alleged co-conspirators actually committed an FCA violation." *See United States ex rel. Hubert v. Bd. of Educ. of City of Chi.*, No. 16 C 4336, 2018 WL 6248827, at *9 (N.D. Ill. Nov. 29, 2018) (quoting *U.S. ex rel. Rockey v. Ear Inst. of Chi., LLC*, 92 F. Supp. 3d 804, 826 (N.D. Ill. 2015)).

As argued here by the Defendants, the Relator's Amended Complaint fails to allege an FCA violation in Counts I and II—for the reasons stated in Section A above. Consequently, the Court concludes that the Amended Complaint fails to allege an actual injury resulting from any conspiracy to defraud the government. Therefore, the Relator's conspiracy claim in Count III also fails and the Court grants the Defendants' requests to dismiss the claim. Thus, the Court need not address the parties' additional arguments on the dismissal of the FCA conspiracy claim in Count III.

## C. Indiana State Law Claims

Because the Court dismisses the Relator's claims for federal Stark Law violations and FCA violations in Count I, II, and III, the only remaining claims are those brought under the Indiana FCA. "The Court's discussion of the FCA claims applies with equal force to the Indiana FCA claims because the Indiana FCA mirrors the Federal FCA in all material respects." *Wagoner*, 2018 WL 4539819, at *4 n.2 (cleaned up). Here, as argued by the Defendants, because the FCA claims in Counts I, II, and III fail, the Indiana FCA claims also fail. Thus, the Court also dismisses the claims in Counts I, II, and III to the extent that they are brought under the Indiana FCA.

## D. Opportunity to Amend

Because the Relator has not adequately alleged a claim under the federal FCA or Indiana FCA, his Amended Complaint is dismissed without prejudice. The Relator has not requested leave to amend the Amended Complaint. However, a court "should freely give leave [to amend pleadings] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008) ("District courts routinely do not terminate a case at the same time that they grant a defendant's motion to dismiss; rather, they generally dismiss the plaintiff's complaint without prejudice and give the plaintiff at least one opportunity to amend [his] complaint." (citation omitted)); *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) (stating that the general rule is that "the district court should grant leave to amend after granting a motion to dismiss"). Nevertheless, a court should not grant leave to amend "where the amendment would be futile." *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011) (quoting *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008)).

Therefore, the Relator is granted up to and including December 2, 2024, to file a motion for leave to amend with an updated, proposed second amended complaint attached to the motion

14

that cures the deficiencies set forth in this Opinion. *See Aldridge v. Forest River, Inc.*, 635 F.3d 870, 875 (7th Cir. 2011) ("[T]he decision to grant or deny a motion to file an amended pleading is a matter purely within the sound discretion of the district court." (quoting *Brunt v. Serv. Emps. Int'l Union*, 284 F.3d 715, 720 (7th Cir. 2002))). If the Relator does not file a motion for leave to amend with an updated, proposed second amended complaint attached by December 2, 2024, the Court will direct the Clerk of Court to close the case.

## CONCLUSION

Based on the foregoing, the Court hereby:

1. GRANTS Defendant Dr. Ernest Mirich's Motion to Dismiss First Amended Complaint [ECF No. 96];

2. GRANTS Defendants Dr. Arshad Malik and Nuclear Cardiology Associates' Motion to Dismiss Plaintiff's Amended Complaint [ECF No. 98];

3. GRANTS Motion to Dismiss of Dr. Zhafar Khalid [ECF No. 100];

4. DISMISSES without prejudice the Amended Complaint [ECF No. 15]; and

5. GRANTS the Relator up to and including December 2, 2024, to file a motion for leave to amend with an updated, proposed second amended complaint attached.

If the Relator does not file a motion for leave to amend with an updated, proposed second amended complaint attached by December 2, 2024, the Court will direct the Clerk of Court to close the case without further notice to the Relator.

SO ORDERED on October 28, 2024.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT